UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Tan Duy Nguyen,
Petitioner

v. Case No. 26-cv-716-SM-TSM

Christopher Brackett, Superintendent of the Strafford County Department of Corrections, et al.,
Respondents

# **O R D E R**

Tan Duy Nguyen is a civil immigration detainee from Vietnam. He brings this habeas corpus petition seeking a court order directing respondents to "identify in writing the precise statutory authority and factual predicate on which they rely to detain Petitioner without eligibility for bond." And, should respondent fail to establish that petitioner is subject to the mandatory detention provisions of 8 U.S.C. § 1226(c), petitioner seeks an order directing respondents to provide him with "a prompt bond hearing under § 1226(a), at which the Government bears the burden." Petition for Habeas Corpus Relief (document no. 1) at 7. Alternatively, if petitioner is subject to mandatory detention under section 1226(c), he hints at - but does not develop - an argument that, as applied in his unique

circumstances, the mandatory detention provision of that statute violates his Due Process rights, thereby entitling him to a bond hearing.

On September 10, 2026, the federal respondents filed their objection to the petition, in which they assert that petitioner is properly detained pursuant to 8 U.S.C. § 1226(c)(1)(B) (mandating detention of any alien who has been convicted of two or more crimes involving moral turpitude). See also 8 U.S.C. § 1227(a)(2)(A)(ii). Accordingly, say respondents, petitioner is not entitled to the relief he seeks and his petition should be dismissed. Respondents do not, however, address Nguyen's (apparent) "as applied" constitutional challenge to section 1226(c).

For the reasons discussed, the petitioner is directed to file a legal memorandum addressing, in detail, his as-applied constitutional challenge to the mandatory detention provisions of 8 U.S.C. § 1226(c)(1)(B) - if, as the court has inferred, he is raising such a claim.

**Background**

Petitioner is an immigrant from Vietnam and was admitted to the United States as a lawful permanent resident in 1988. On

November 18, 2015, the Salisbury, Massachusetts Police Department charged him with one count of statutory rape of a child and three counts of indecent assault and battery on a person 14 or over. The victim was 15 years old at the time of the assaults.

The statutory rape charge was withdrawn and, on January 24, 2017, petitioner pled guilty to the three counts of indecent assault and battery on a person over 14. As part of his plea, petitioner signed a waiver of rights that included an "Alien Rights Notice," which specifically informed him that based upon his convictions, he could (and very likely would) be deported from the United States (document no. 8-1, at 5).

Petitioner was sentenced to two and a half years in the House of Corrections, six months of the sentence to be served and the remaining two years to be suspended until January 24, 2019. He was also sentenced to a term of probation for two years, to run concurrent with the suspended portion of his incarceration. According petitioner, his incarcerative sentence was, in practice, a sentence to "time served" and he was released from state custody in January of 2017.

More than nine years later, on September 1, 2026, ICE arrested petitioner in Salisbury, Massachusetts. He was notified that he is removable from the United States pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii) for having committed two or more crimes involving moral turpitude, not arising out of a single scheme of criminal conduct. See Notice to Appear (document no. 8-2). Petitioner is currently detained at the Strafford County Department of Corrections.

**Discussion**

Respondents assert that petitioner's detention is mandated by 8 U.S.C. § 1226(c), which provides, in relevant part, that:

> The Attorney General shall take into custody any alien who . . . is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii) . . . of this title, . . .
>
> when the alien is released [from criminal custody].

8 U.S.C. § 1226(c)(1)(B) (emphasis supplied). In turn, section 1227(a)(2)(A)(ii) provides that:

> Any alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial, is deportable.

8 U.S.C. § 1227(a)(2)(A)(ii) (emphasis supplied). Petitioner does not deny that his crimes of conviction are "crimes involving moral turpitude." See, e.g., Maghsoudi v. I.N.S., 181 F.3d 8, 15 (1st Cir. 1999) ("we have no difficulty in concluding that [defendant's] Massachusetts indecent assault conviction meets the BIA's general standard for a crime involving moral turpitude.").

Nor does petitioner deny that the criminal charges to which he pled guilty did not arise "out of a single scheme of criminal conduct." See generally Pacheco v. Immigr. & Naturalization Serv., 546 F.2d 448, 451-52 (1st Cir. 1976) ("a scheme, to be a 'single scheme,' must take place at one time; there must be no substantial interruption that would allow the participant to disassociate himself from his enterprise and reflect on what he has done. . . . When the immediate activity has ended, even though a 'scheme' calls for future activity a participant has his second chance to make a decision."). See also Police Report, Salisbury Police Department (document no. 8-3) at 6 (documenting that each assault was distinct and temporally removed from the others).

And, finally, the Supreme Court's opinion in Nielsen v. Preap, 586 U.S. 392 (2019), forecloses any statutory argument

that the government's failure to timely arrest petitioner when he was released from state criminal custody somehow entitles him to a bond hearing. See Id. at 418 ("In short, we read the 'when released' directive to apply when there is a release. In other situations, it is simply not relevant. It follows that both of subsection (c)'s mandates — for arrest and for release — apply to any alien linked with a predicate offense identified in subparagraphs (A)-(D), regardless of exactly when or even whether the alien was released from criminal custody.") (emphasis supplied).

Petitioner does, however, appear to be raising an "as-applied" constitutional challenge to the lack of any opportunity for him to obtain a bond hearing under section 1226(c)(1). Specifically, he notes that section 1226(c)(1) requires that the government detain a noncitizen falling within the statute's scope "when the alien is released" from criminal custody, yet he was not arrested by ICE until more than nine years after he was released from state criminal custody. Thus, says petitioner, in his particular case, he:

> has a profound liberty interest in freedom from civil detention. Petitioner's lawful-permanent-resident status, long residence, United States-citizen children, established property interests, and completed criminal sentence reinforce the need for an

> individualized assessment rather than detention based on a categorical or unexamined presumption.
>
> * * *
>
> . . . Petitioner does not contend that the detention, which began on September 1, 2026, is already unreasonably prolonged solely by reason of its current duration. Nonetheless, the Due Process Clause limits detention that becomes unreasonably prolonged in relation to its asserted purposes.
>
> Petitioner's individualized circumstances — including decades of lawful permanent residence, completion of the criminal sentence and probation in 2019, United States-citizen children, property ownership, and community ties — must be considered if detention continues while removal proceedings are litigated and while Petitioner considers pursuing post-conviction relief.

Petition at 6-7 (emphasis supplied).

As petitioner seems to concede, the Supreme Court's opinion in Preap, supra, rejected the statutory argument that the government's delay in arresting an alien following his release from criminal custody - even a delay of several years - somehow moves an otherwise-covered alien from section 1226(c)'s mandatory detention requirement into section 1226(a)'s discretionary detention/bond framework. The Court held that the class of aliens covered by section 1226(c)(1) is identified by the predicate grounds set forth in sections 1226(c)(1)(A)-(D), rather than by whether ICE complied with the "when the alien is released" requirement within any particular timeframe. Preap,

586 U.S. at 418. But, the Court did not address any as-applied due-process claim based on the government's delay. Indeed, Justice Kavanaugh's concurrence expressly emphasized that, "No constitutional issue is presented. The issue before us is entirely statutory." Preap, 586 U.S. at 421 (Kennedy, J. Concurring).

Conceivably, then, that leaves open a narrow window of opportunity for an individual habeas petitioner to argue that mandatory detention without a bond hearing under section 1226(c)(1) is unconstitutional in those very limited circumstances when there has been an extraordinary post-release delay combined with particular, perhaps unusual, facts (e.g., long-term lawful residence in the United States, rehabilitation, gainful employment, years of compliance with the law, family/community ties, and/or the government's knowledge of the person's whereabouts). See, e.g., Perera v. Jennings, 598 F. Supp. 3d 736 (N.D. Ca. 2022); Pham v. Becerra, 717 F. Supp. 3d 877 (N.D. Ca. 2024).

The Supreme Court has made plain that, "Congress, justifiably concerned that deportable criminal aliens [i.e., the group that includes individuals who committed crimes involving moral turpitude] who are not detained continue to engage in

crime and fail to appear for their removal hearings in large numbers, may require that persons such as respondent be detained for the brief period necessary for their removal proceedings." Demore v. Kim, 538 U.S. 510, 513 (2003) (emphasis supplied). See also Preap, 586 at 398 ("To address this problem, Congress mandated that aliens who were thought to pose a heightened risk be arrested and detained without a chance to apply for release on bond or parole."). Nevertheless, petitioner seems to be arguing that given the lengthy delay between his release from state custody and the government's decision to detain him, a fair implication arises that the government concluded that he does not pose any significant threat of recidivism or danger to the community (otherwise, of course, it would have detained him immediately upon his release). And, in those intervening years, he turned his life around, established firm connections in the community, became a contributing member of society, etc. Consequently, petitioner seems to suggest, as applied to him and his specific circumstances, the mandatory detention provision under which he is being held and denied a bond hearing unconstitutionally deprives him of due process.

**Conclusion**

In short, it seems petitioner claims that detaining him without any opportunity for a bond hearing is a bit like

detaining Scrooge on Christmas morning: during the nine years between his release from state custody and his subsequent detention by ICE, he became a changed person. Consequently, the Congressional presumption that individuals meeting his general characteristics are dangerous and/or pose a flight risk not only does not apply to him but, given the unusual circumstances presented, also serves to violate his constitutionally protected rights. Thus, the argument goes, the Constitution mandates a bond hearing that is otherwise proscribed by 8 U.S.C. § 1226(c).

As noted, however, that claim is wholly undeveloped and presented without support from any precedent. Consequently, on or before **November 10, 2026**, petitioner shall file a legal memorandum specifically laying out the basis for his as-applied constitutional challenge to section 1226(c)(1)'s mandatory detention provision - again, provided that he is actually advancing such a claim. In it he shall include all legal precedent that is supportive of his position.

Within 14 days of its receipt of petitioner's memorandum, the government may file an objection. Alternatively, of course, the government can afford petitioner a constitutionally adequate bond hearing before an immigration judge, at which the government bears the burden to either: (1) prove by a

preponderance that petitioner is a flight risk; or (2) prove by clear and convincing evidence that he poses a danger to the community.

**SO ORDERED.**

____________________________
Steven J. McAuliffe
United States District Judge

October 14, 2026

cc: Counsel of Record